IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF IOWA

In the matter of:

**Shanna Y. Zilisch**                                          Case No. 18-00449-als7

    Debtor(s),

**Shanna Y. Zilisch**                                          Adv. Pro. No. 18-99001-als

    Plaintiff(s)

v.

**Fedloan Servicing, and U.S. Department of Education**

    Defendant(s).

**MEMORANDUM OF DECISION**
**(date entered on docket: September 7, 2021)**

    Plaintiff Shanna Zilisch (hereinafter Zilisch) filed this adversary proceeding seeking discharge of her student loan debt held by the U.S. Department of Education (hereinafter DOE) pursuant to 11 U.S.C. § 523(a)(8). The Court has jurisdiction of these matters under 28 U.S.C. §§157(b)(1) and 1334. Upon consideration of the evidence and arguments presented, the following findings of fact and conclusions of law are entered by the Court pursuant to Federal Rules of Bankruptcy Procedure 7052 and 9014. For the reasons stated Plaintiff's request to discharge her student loans is granted.

**BACKGROUND**

    Shanna Zilisch is a 41-year-old single mother of a 7-year-old daughter. Zilisch began her education in 1997 at Iowa State University, where she received a Bachelor of Arts in Art and Design in December of 2000. From 2001 to 2003 she remained at Iowa State and pursued a second Bachelor of Arts in Liberal Studies. In 2003 she pursued a master's degree in art history at Virginia Commonwealth University. She interned in London in 2004 and subsequently graduated with her Masters in 2005. In 2012 Zilisch entered into a one-year post-baccalaureate certificate program through the International Art Institute of New York, where she studied for eight months in Italy. Zilisch consolidated all of her loans with the DOE and has five promissory notes outstanding. As of June 16, 2021, Zilisch owes approximately $145,482.85 related to those notes. In 2018 Zilisch

filed for chapter 7 bankruptcy relief. She now seeks to have the balance of her student loans for years 1997 to 2012 discharged due to undue hardship. A trial on the Complaint was held on June 20, 2021.

## DISCUSSION

As prescribed by 11 U.S.C. § 523(a)(8) student loans are only subject to discharge in bankruptcy where specific circumstances show repayment would constitute an "undue hardship on the debtor [or] the debtor's dependents." The plaintiff carries the burden of establishing undue hardship, a term not defined in the bankruptcy code, by a preponderance of the evidence. *Piccinino v. United States Dep't of Educ. (In re Piccinino)*, 577 B.R. 560, 564 (B.A.P. 8th Cir. 2017). In this Circuit courts examine the totality of the debtor's circumstances to determine undue hardship. *See Long v. Educ. Credit Mgmt. Corp. (In re Long)*, 322 F.3d 549, 554-55 (8th Cir. 2003).

The broad test adopted in *Long* allows the bankruptcy court flexibility to evaluate a debtor's specific circumstances, which may give rise to a finding of undue hardship. *In re Long*, 322 F.3d 549 (8th Cir. 2003); *Shadwick v. United States Dep't of Educ. (In re Shadwick)*, 341 B.R. 6, 11 (Bankr. W.D. Mo. 2006). *Long* requires inquiry into three areas for a sufficient totality of the circumstances analysis: "(1) a debtor's past, present, and reasonably reliable future financial resources; (2) a calculation of the debtor's and [any] dependent's reasonable necessary living expenses; and (3) any other relevant facts and circumstances surrounding each particular bankruptcy case." *Long*, 322 F.3d at 554. Each of these will be considered in light of the evidence admitted at trial and the post-trial briefing submitted by parties.

### 1. Past, Present, and Reasonably Reliable Future Financial Resources

After her graduation from college, Zilisch held a part-time position teaching an introduction to art class for two semesters. This class offering was later terminated. In 2014 she began working at Data Dimensions, which was the job she held when she filed for bankruptcy. Her base pay was just under $12 per hour and she was able to work approximately 40 hours each week. She was terminated after she suffered a work injury which necessitated multiple surgeries on her hands, thumbs, and shoulders, requiring weeks of recovery time. For approximately the next year she was unemployed. Zilisch applied for multiple positions and has held sporadic part-time work when she could, but low pay, inflexible working hours to address her medical needs

and childcare issues caused her to leave these jobs. Between 2014 and 2018 her annual income ranged from $10,858 to $25,406.

Zilisch is currently employed at the Transportation Safety Administration (TSA) as a security officer at the Dubuque, Iowa airport. She earns an hourly wage of $17.33 per hour and works 25 hours each week, making her annual income for the foreseeable future $22,529. She also receives $540 each month as a child support obligation from her child's father. Zilisch has taken advantage of every opportunity available to her including utilizing state medical and food assistance programs, as well as relying on her aging parents for financial and familial support. There is no evidence to indicate Zilisch has not been trying to find higher-paying employment. On the contrary, Zilisch purportedly looks for higher paying jobs on a daily basis, however due to the limitations imposed by her health and the fact that many of the jobs in her field of study require her to move or commute longer distances, she has been unsuccessful in finding a job that would result in a substantially higher income.

Relying on *Jesperson*, the DOE maintains a hardship discharge would be premature at this time because there is no evidence to show Zilisch will not have any future ability or opportunity to earn a higher income. *In re Jesperson*, 571 F.3d. 775, 779 (8th Cir. 2009). Jesperson was a lawyer who owed over $300,000 in student loans. The Court of Appeals reversed the bankruptcy court determination that Jesperson's student loan debt be discharged. In doing so it analyzed the debtor's age, good health, number of degrees, marketable skills, lack of dependents, self-imposed conditions which limited his monthly income and failure to pay any amount on the student loan when he had sufficient income to do so. *Id.* at 782. These facts are markedly different than those in the present matter. In 2000, Zilisch received an official diagnosis of an autoimmune disease which affects her spine, hips, hands, and fingers. The current prognosis is that the issues with her connective tissues will persist and eventually her bones will fuse at the joints and cause organ failure, although it is unclear when this will happen. She also suffers from a multitude of side effects from her medication regimen. Zilisch is clearly not in good health, suffering from a condition that is beyond her control, which will continue to limit her ability to earn and eventually result in total disability.

Zilisch has made a good faith effort to repay her student loans when she could. The facts in the present matter could not be more opposite than those at issue in *Jesperson* necessitating the opposite conclusion.

### *2.* **Reasonable and Necessary Living Expenses**

For expenses to be reasonable and necessary, "an expense must be 'modest and commensurate with the debtor's resources.'" *Jesperson*, 571 F.3d. at 780; citing *DeBrower v. Pa. Higher Educ. Assistance Agency*, 387 B.R. 587, 590 (Bankr. N.D. Iowa 2008). A debtor is entitled to maintain a minimal standard of living with "sufficient financial resources to satisfy needs for food, shelter, clothing and medical treatment." *Nielsen v. ACS, Inc. (In re Nielsen)*, 473 B.R. 755, 760 (B.A.P. 8th Cir. 2012); citing *Brown v. Am. Educ. Servs., Inc.*, 378 B.R. 623, 626 (Bankr. W.D. Mo. 2007). Further, if the debtor's "reasonable future financial resources will sufficiently cover payment of the student loan debt – while still allowing a minimal standard of living – then the debt should not be discharged." *Jesperson*, 571 F.3d at 779; citing *In re Long*, 322 F.3d at 554-55.

Zilisch has a modest amount of monthly expenses, which have changed slightly since the filing of her bankruptcy petition. However, the DOE has not advanced the argument that any of these expenses are outside those which are modest and commensurate with Zilisch's resources. The listed amounts indicate Zilisch has just enough money to satisfy her and her dependent's needs for food, shelter, clothing and medical treatment, with little to no money left over after meeting these necessities. The DOE does not question the reasonableness of Zilisch's expenses and neither does the Court.

### **3. Other Relevant Facts and Circumstances**

This third and final factor allows the court to examine a wide range of facts and issues that may be relevant to a finding of undue hardship, including:

> (1) total present and future incapacity to pay debts for reasons not within the control of the debtor; (2) whether the debtor has made a good faith effort to negotiate a deferment or forbearance of payment; (3) whether the hardship will be long term; (4) whether the debtor has made payments on the student loan; (5) whether there is permanent or long-term disability of the debtor; (6) the ability of the debtor to obtain gainful employment in the area of study; (7) whether the debtor has made a good faith effort to maximize income and minimize expenses; (8) whether the dominant purpose of the bankruptcy petition was to discharge the student loan; and (9) the ratio of student loan debt to total indebtedness.

*Fern v. U.S. Dep't of Educ. (In re Fern)*, 563 B.R. 1, 4 (B.A.P. 8th Cir. 2017). This is not an exclusive list of items courts are permitted to consider and does not require courts to address each and every factor in the list. *In re Piccinino*, 577 B.R. at 566.

Zilisch's meager income leaves little to no money to pay her outstanding debts. "Self-imposed restrictions are relevant to a determination of undue hardship." *In re Piccinino*, 577 B.R. at 566; citing *Jesperson*, 571 F.3d. at 782; citing *Loftus v. Sallie Mae Servicing*, 371 B.R. 402, 410-11 (Bankr. N.D. Iowa 2007). The restrictions that Zilisch must overcome are not self-imposed. There is no evidence to show that Zilisch is actively making decisions to limit her employment or that she has an unrealistic perception of her future employment prospects. She continues to search for work that will allow her the time she needs to deal with numerous ongoing health issues while caring for her daughter.

The parties agree that Zilisch has made extensive efforts to negotiate deferments, forbearances, and payment plans with the DOE. She has taken advantage of these programs for years and is currently in an ICRP necessitating a $0.00 a month payment. As a result of these programs the DOE does not classify the student loan as being in default which apparently prevents efforts to collect the amount owing.

Zilisch's current prognosis will be total disability and there is no cure for her medical issues. Her current treatment is aimed at slowing the disease and managing symptoms. No evidence was presented that any determinations of permanent or long-term disability exist at this time have been made by any state agencies. But the evidence that was presented is unrebutted and the Court finds Zilisch's explanation that her condition will only continue to worsen is credible.

The DOE questions why Zilisch selected an education in art history and restoration. She responds that she never expected an extremely lucrative career but, after researching potential salaries and career paths for employees holding similar degrees, she expected to make enough money to repay her loans. She continued her education to attempt to remain a marketable applicant for jobs in her field. The opportunities she has found either do not pay enough to allow her to support herself and her daughter, or they require her to move from her support system, which would undoubtedly increase her monthly expenses. It is not the responsibility of, or appropriate for, the court to look into the reasonableness of a debtor's chosen career path, nor the DOE's decision to loan money to a debtor based upon an area of study.

The schedules reflect that the largest single debt owed by Zilisch is her student loans. The DOE asserts that the primary purpose for her bankruptcy filing was to discharge these obligations. The student loan debt clearly predominates over the other debt listed, although the debt listed and Zilisch's precarious financial position would still support a chapter 7 filing. The fact that Zilisch's student loans may predominate the amount of debt being discharged should not conclusively bar her from seeking the fresh start she clearly needs, especially if she otherwise qualifies for a hardship discharge under the totality of the circumstances.

The DOE's primary argument is that the modest amount Zilisch makes still allows her to make a student loan payment of $0.00 each month under her current income-based repayment plan. The DOE maintains that $0.00 a monthly payment cannot support a finding of undue hardship because she will not be forced to pay more than she can afford. While the availability of a flexible repayment option is a relevant fact to consider, "it cannot be the only basis to consider in determining undue hardship." *In re Fern*, 563 B.R. at 4; citing *In re Lee*, 352 B.R. at 95.

"Placing too much weight on the ICRP would have the effect in many cases of displacing the individualized determination of undue hardship mandated by Congress in § 523(a)(8) since the payments on a student loan will almost always be affordable, *i.e.*, not impose an undue hardship on a Debtor." *In re Lee*, 352 B.R. at 95-6.

> "[T]he availability and terms of the ICRP should not be given undue weight under the totality of circumstances analysis because it serves a fundamentally different purpose than the discharge provision (and exceptions thereto) of the Bankruptcy Code. A survey of the legislative history behind legislation related to the ICRP indicates that its primary goal is to assist borrowers in avoiding default. In contrast, the Bankruptcy Code serves to provide a fresh start to 'honest but unfortunate debtors.'"

*Id.* at 96 (footnotes omitted). "The ICRP provides temporary relief from the burden of a student loan, but it does not offer a fresh start." *Id.* at 97. Thus, the fact that Zilisch may qualify for a $0.00 payment under an ICRP while still allowing her and her dependent's their reasonable monthly expenses should not automatically foreclose her ability to seek an undue hardship discharge under the Bankruptcy Code, as the ICRP and Bankruptcy Code are working toward patently different goals. Here it is clear the ICRP is accomplishing its stated goal; Zilisch has not yet defaulted on her student loans. Zilisch presumably filed bankruptcy for its promise of a fresh start, which goes beyond merely preventing debtors from entering default. The fact that she has

6

not yet defaulted on her student loans and could continue to afford the $0.00 monthly payment does not mean she is not struggling financially and that the outstanding student loan obligations do not constitute an "undue burden."

For the reasons stated,

**IT IS ORDERED**:

1. The loans incurred are an undue hardship and therefore discharged.
2. Judgment will enter accordingly.
3. The parties shall bear their own costs.

/s/ Anita L. Shodeen
Anita L. Shodeen
U.S. Bankruptcy Judge

Parties receiving this Memorandum of Decision from the Clerk of Court:
Electronic Filers in this Chapter Case